## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 29 2020, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joshua Vincent
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Civil Commitment of:

T.B.,

*Appellant-Respondent,*

v.

Neuro Diagnostic Institute,

*Appellee-Petitioner.*

October 29, 2020

Court of Appeals Case No.
20A-MH-1085

Appeal from the Marion Superior Court

The Honorable Steven R. Eichholtz, Judge

The Honorable Kelly M. Scanlan, Judge Pro Tempore

Trial Court Cause No.
49D08-2002-MH-5113

**Najam, Judge.**

## Statement of the Case

T.B. appeals the probate court's order granting the Neuro Diagnostic Institute's ("NDI") petition to extend her temporary commitment to a regular commitment. T.B. presents one issue for our review, namely, whether the probate court's finding that she is gravely disabled is supported by clear and convincing evidence.

We affirm.

## Facts and Procedural History

T.B. has a diagnosis of schizoaffective disorder: bipolar type. On February 3, 2020, a few days after T.B. had been discharged from Methodist Hospital, law enforcement officers found T.B. "in the middle of the road," and she was "confused and disorganized." Tr. at 6. T.B. told officers that "she had been sleeping outside waiting for [someone named] Eric to be discharged" from Methodist. *Id.* at 6-7. "She was very manic[.]" *Id.* at 7. The officers transported T.B. to Sandra Eskenazi Mental Health Center for treatment. And on February 10, the probate court ordered a temporary commitment for T.B.

On March 11, T.B. was transferred to NDI. Upon her admission there, T.B. "was very manic—speaking very rapidly. Her train of thought was very disorganized—[she] would move from one topic to another." *Id.* While at NDI, T.B., "on several occasions talk[ed] to entities that nobody else [could] see." *Id.* T.B. displayed delusional thinking. And T.B. stated that she would be living at various addresses upon her discharge, but those addresses

"physically do not exist." *Id.* at 8. She gave proper street names, but the addresses were not "actual home addresses." *Id.*

[5] On April 17, NDI filed a petition requesting the probate court to extend T.B.'s temporary commitment, which was set to expire on May 10, to a regular commitment. At a hearing on that petition on May 6, NDI presented evidence that T.B. was not able to care for herself. Specifically, Carrie Mefford, a psychiatric mental health nurse practitioner at NDI, testified that, as of the date of the hearing, she did not believe that T.B. was able to provide for herself shelter, food, clothing, or transportation to medical appointments. Mefford stated that T.B. was unemployed and "no longer receive[d] Social Security Disability," so she had no income. *Id.* Mefford stated that she believed "[T.B.] need[ed] a court order to force treatment for another four to six months." *Id.* at 9. Mefford explained as follows:

> [S]he still is obviously suffering from a lot of delusions. That [sic] it would take awhile to work on her medications to get those where they need to be to where she would be able to go back out to the community and provide for those, you know, shelter, food, clothing, medication, transportation things [sic] and getting her set up with the appropriate resources will take a little bit of time.

*Id.* Mefford concluded that T.B. was mentally ill and gravely disabled.

[6] T.B.'s psychiatrist at NDI, Dr. Bethany McGovern, testified that T.B.

> [d]oes not have a reality-based discharge plan and she also has been found in a state of disarray. My understanding is that she was found with feces and vomit and things in the car with her

because she did not have facilities and she did not have the
ability to care for herself. And her mental state has not
significantly changed since then.

*Id.* at 16. Dr. McGovern testified that she believed that T.B. would not take her
prescribed medication if discharged because "she does not have money or
transportation or organized thinking enough to follow through with that." *Id.*
at 17. Dr. McGovern agreed that T.B. was mentally ill and gravely disabled.

[7] T.B. testified at the hearing. She stated that she had a few options for places to
live upon discharge, including with her "fiancé, Eric," whom no one could
verify was a real person. *Id.* at 18. T.B. stated that she was "not delusional,"
and she was "fine" as long as she got some sleep. *Id.* at 20. T.B. stated that she
had a house and a job at UPS as a "branch supervisor." *Id.* T.B. explained that
she did not talk to herself, but she was "practicing [her] preaching." *Id.* at 22.
At the conclusion of the hearing, the probate court granted NDI's petition for
regular commitment for "a period of time expected to exceed ninety (90) days."
Appellant's App. Vol. 2 at 12. This appeal ensued.

## Discussion and Decision

[8] T.B. appeals the probate court's order granting NDI's petition for a "regular
commitment." In a regular involuntary commitment proceeding, the petitioner
may seek to have an individual hospitalized for more than ninety days. Ind.
Code § 12-26-7-1 (2020). To obtain such a commitment, the petitioner must
prove by clear and convincing evidence that (1) the individual is mentally ill
and either dangerous or gravely disabled; and (2) detention or commitment of

that individual is appropriate. I.C. § 12-26-2-5(e). When reviewing the sufficiency of the evidence supporting an involuntary civil commitment, we will affirm if, after considering the probative evidence and reasonable inferences supporting the decision, a reasonable trier of fact could have found the necessary elements proven by clear and convincing evidence. *P.B. v. Evansville State Hosp.* (*In re Commitment of P.B.*), 90 N.E.3d 1199, 1202 (Ind. Ct. App. 2017). We will not reweigh evidence or judge witness credibility. *Id.*

[9] T.B.'s sole contention on appeal is that NDI did not prove by clear and convincing evidence that she was gravely disabled. "Gravely disabled" is defined as

> a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>
> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

I.C. § 12-7-2-96.

[10] T.B. asserts that NDI "failed to establish a sufficient nexus between [her] mental illness and the inability to provide for her needs." Appellant's Br. at 8. Specifically, T.B. maintains that NDI did not prove that her inability to care for herself was the result of a mental illness rather than a simple "lack of financial resources." *Id.* at 10. T.B. also asserts that NDI did not prove that, at the time

of the hearing, she suffered from a substantial impairment that resulted in her being unable to function independently. But T.B.'s contentions amount to a request that we reweigh the evidence, which we cannot do.

[11] NDI presented ample evidence that, at the time of the hearing, T.B. was mentally ill and, as a result, was unable to provide for herself shelter, food, or necessary medical treatment. Prior to her temporary commitment, T.B. was apparently living in a car with vomit and feces in it, and Dr. McGovern testified that T.B.'s "mental state has not significantly changed since then." Tr. at 16. We hold that NDI proved by clear and convincing evidence that T.B. was gravely disabled at the time of the hearing. The probate court did not err when it granted the regular commitment order.

[12] Affirmed.

Bradford, C.J., and Mathias, J., concur.